# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY LEE ELZIG, | Case No. 1:18–cv–00746–SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I. INTRODUCTION

On June 1, 2018, Plaintiff Ricky Lee Elzig ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits. (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. BACKGROUND

On October 23, 2015, Plaintiff filed an application for Disability Insurance Benefits, alleging he became disabled on October 24, 2011, due to back injuries, asthmatic lung issues, a partial rectal prolapse, and "herpes zoster/loss of sight in right eye." (Administrative Record

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 7.)

("AR") 16, 177–83, 203.)  Plaintiff was born on September 23, 1960, and was 51 years old on the alleged disability onset date.  (*See* AR 177.)  Plaintiff has a high school education and previously worked as an auto dismantler at an auto wrecking yard from 1986 to 2011.  (AR 204.)

**A.    Relevant Medical Evidence**

**1.    Mark Twain Medical Center**

On November 17, 2011, Plaintiff reported to the emergency room at the Mark Twain Medical Center in Calaveras County.  (AR 382–83.)  Plaintiff complained of increased back pain after lifting heavy equipment at work.  (AR 382.)  The pain sometimes radiated down his legs and increased when he was in an "upright position" and when he moved.  (AR 382.)  Plaintiff was diagnosed with back spasms and a lumbar strain, and directed to apply heat/warm compression to the lumbar region three to five times a day.  (AR 379–80.)  An x-ray of Plaintiff's lumbar spine revealed normal results.  (AR 386.)

Following the emergency room visit, Plaintiff also had MRIs taken of his thoracic and lumbar spine as well as his hips.  The MRI of Plaintiff's thoracic spine, performed on December 2, 2011, showed a disc bulge at the T8–T9 level effacing the ventral thecal sac and minimally distorting the spinal cord.  (AR 488.)  The thoracic MRI also revealed minimal disc degeneration at the T7–T8 and T9–T10 levels that did not encroach on the cord.  (AR 488.)  A follow up CT scan of the thoracic spine revealed a "classically benign hemangioma in the right T7 traverse process" and no further follow up was recommended for this finding.  (AR 497.)  The MRI of Plaintiff's lumbar spine showed a "tiny" posterior annular tear and a disc bulge at the L5–S1 level, but no neuropathic impingement and no focal abnormalities.  (AR 490.)  The MRI of Plaintiff's bilateral hips revealed mild degenerative changes in both hips, with left greater than right.  (AR 492.)

**2.    Gary Wisner, M.D.**

On December 5, 2011, orthopedic surgeon Dr. Gary Wisner, M.D., completed his "Frist Report of Occupational Injury or Illness" for Plaintiff's workers' compensation claim.  (AR 486.)  Plaintiff complained of shooting pains, limited range of motion, and back spasms, numbness, and stiffness.  (AR 486.)  Dr. Wisner's objective findings included good heel/toe

walk, no gross instability, and mild antalgic gait. (AR 486.) Dr. Wisner provided Plaintiff with brochures related to his condition, directed Plaintiff to perform home exercises, and referred Plaintiff to physical therapy. (AR 486.)

Plaintiff continued to see Dr. Wisner on a regular basis for progress reports in Plaintiff's workers' compensation claim between January 2012 and February 2016. Plaintiff's pain varied at each appointment, but Dr. Wisner noted after each physical examination that there were no acute changes in Plaintiff's condition. (*See, e.g.*, AR 522 (1/30/2012: "Pt. states he has good and bad days"), 719 (12/18/2012: "Pt. has spasms today and had bad flareup last week"), 746 (6/12/2013: "Pt. states his back feel slightly better in warmer weather – occ. spasm and stiffness"), 902 (8/21/2015: "Pt. states his back has good and bad days depending on activities and weather").)

On November 20, 2014, Dr. Wisner ordered an MRI of Plaintiff's thoracic and lumbar spine. (AR 827.) Dr. Wisner also ordered an MRI of Plaintiff's bilateral hips and pelvis on December 29, 2014. (AR 832.) The MRI of Plaintiff's lumbar spine revealed a small posterior disc protrusion at the L4–L5 level that minimally abutted the L5 nerve root. (AR 847.) The degeneration at the L5–S1 level remained unchanged from the 2011 MRI of Plaintiff's lumbar spine. (AR 847.) The MRI of Plaintiff's thoracic spine showed that the disc protrusion at the T8–T9 level decreased in size and the disc protrusion at the T7–T8 and T9–T10 levels remained unchanged. (AR 851.) The MRI of Plaintiff's bilateral hips and pelvis revealed a "new small foci of arthritic marrow edema in the acetabulum bilaterally" and further degeneration of the acetabular labra. (AR 835.) Other than the arthritic edema in the acetabula, Plaintiff's pelvic structures appeared normal. (AR 835.)

At Plaintiff's appointments on July 3, July 23, August 21, October 21, December 23, 2015, as well as February 3, 2016, Dr. Wisner wrote "no work" on Plaintiff's workers' compensation report. (AR 919, 920, 922, 924, 928, 932.) The meaning of the "no work" notation is not clear. However, it appears to be a description of Plaintiff's work status as it is at the bottom of the section on the form for "WS," which may stand for "work status."

### 3.    Daniel M. D'Amico, M.D.

On March 12, 2014, Plaintiff presented to orthopedic surgeon Dr. Daniel D'Amico, M.D., for a qualified medical evaluation. (AR 792–802.) Plaintiff reported that he experiences back pain daily and back stiffness in the morning when he first wakes up, but he denied experiencing any shooting pain or numbness and tingling in his legs. (AR 794.) The pain varies from moderate to less than moderate at times, and fairly severe at other times. (AR 795.) He can stand for less than an hour and walk less than a few blocks before he begins to feel any discomfort. (AR 795.) He can also only sit for "not very long" and drive for "not long" before needing to move around. (AR 795.) Plaintiff also reported that he has had three MRIs and a CT scan to look at his back and he "was told that he did not have any grossly significant abnormalities." (AR 795.) Plaintiff treats his pain with a home TENS unit, ibuprofen, a vibrating massager, and heat pads, and he refuses to take more aggressive narcotic medications. (AR 794.)

Upon physical examination, Dr. D'Amico noted that Plaintiff was a "well-muscled, medium-built" man who sat in the exam room without difficulty and without favoring either side of his body. (AR 796.) Plaintiff walked without difficulty including satisfactory heel/toe walking. (AR 796.) Dr. D'Amico noted a loss of lumbar lordosis and a mild thoracolumbar curve along with good paraspinal muscles that were not spastic or asymmetric. (AR 796.) Plaintiff had full range of motion in the thoracic spine and cervical spine, and in the lumbar spine Plaintiff retained 15 degrees lateral bending on either side, 15 degrees on flexion, and 10 degrees on extension. (AR 796–97.) Straight leg test was negative and there was no loss of strength in Plaintiff's legs. (AR 797.)

Following the physical examination and review of the medical records, Dr. D'Amico opined that Plaintiff's "subjective complaints are far out of proportion to the MRI findings and physical examination findings." (AR 799.) Dr. D'Amico opined Plaintiff could not return to his job as an auto dismantler, but could bend and lift up to thirty pounds and stand up to four hours per day. (AR 800–01.)

On June 1, 2015, Dr. D'Amico reviewed Plaintiff's MRIs from January 2015 ordered by Dr. Wisner and requested a re-evaluation of Plaintiff's condition. (AR 874.) Dr. D'Amico re-evaluated Plaintiff on July 6, 2015, and noted Plaintiff's "heel walking was decreased as if he had poor balance or weakness or both." (AR 891.) In the low back, Plaintiff's extension range was painful at 20 degrees of extension, flexion was 50 degrees, and lateral bending was less than 30 degrees to the right and left. (AR 891.) Plaintiff had a "questionably positive" straight leg raising sign in the seated position at about 80 degrees on the right and positive straight leg raising at 45 degrees on the left. (AR 891.)

Dr. D'Amico concluded that Plaintiff would "probably not" be able to return to his work as an auto dismantler or "any job that requires physical activities, such as bending, lifting, twisting, or long sitting." (AR 894.) Dr. D'Amico opined Plaintiff's condition was "fairly stable" and he was able to "function at the level he is now living." (AR 895.) Plaintiff would not be able to perform "very physical work," but he suggested that consideration should be given to retraining Plaintiff for semi-sedentary or non-physical work, such as a watchman or security guard. (AR 895.)

**4.    Jonathan Schwartz, M.D.**

On January 28, 2016, consultative examiner Dr. Jonathan Schwartz, M.D., performed a complete internal medicine evaluation of Plaintiff. (AR 912–16.) Plaintiff reported that he began experiencing pain in his lower back in 2011, which occurs every day and ranges from 3 to 9 out of 10 in severity. (AR 912.) The pain is in the center of his lower back and radiates to the back of his lower extremities down to his feet. (AR 912.) Plaintiff also reported that the pain is alleviated by a TENS unit, back brace, and massages. (AR 912.) Plaintiff stated that he could dress himself, perform his own hygiene activities, do a small amount of yard work, and go shopping when necessary, but did not do any household chores such as cooking, vacuuming, or mopping. (AR 913.)

Upon physical examination, Dr. Schwartz noted Plaintiff was in no acute distress and able to walk into the room without any assistance or difficulty. (AR 914.) Dr. Schwartz also noted negative straight leg tests in the seated and supine positions, but decreased range of motion in

Plaintiff's lumbar spine.  (AR 915–16.)  Dr. Schwartz diagnosed Plaintiff with lower back pain, second to a strain and spasms.  (AR 916.)  According to Dr. Schwartz, Plaintiff was capable of stooping frequently, standing and walking up to six hours a day, sitting with no limitations, and lifting and carrying fifty pounds occasionally and twenty-five pounds frequently.  (AR 916.)

**5.  Madeline Aquino, M.D.**

On April 13, 2016, Plaintiff presented to physical medicine and rehabilitation specialist Dr. Madeline Aquino, M.D., to establish care for his back pain.  (AR 1074–77.)  Plaintiff reported that he experiences a constant, stabbing pain in his lower back that ranges in severity from 3 to 6 out of 10 in severity on average, but his TENS units provides "good relief" and his medications provide "adequate decrease in the pain level."  (AR 1074.)  Plaintiff also reported that he "performs activities of daily living, but has had to restrict employment due to pain."  (AR 1074.)  Dr. Aquino observed a normal gait and normal range of motion in Plaintiff's cervical spine, but mildly decreased range of motion in the lumbar spine and mildly positive straight leg raising on the right side.  (AR 1076.)  Dr. Aquino prescribed pain relief patches for Plaintiff's back, requested additional pads for Plaintiff's TENS unit, and encouraged Plaintiff to continue his home exercise program as well as observance of proper body mechanics and avoidance of aggravating activities.  (AR 1076.)  On the portion of the form for Plaintiff's "work status," Dr. Aquino checked the box for "modified work with specific restrictions" and added "as previously given, per AME/QME/PR4 – semi sedentary work."  (AR 1077.)

Plaintiff returned for follow up appointments with Dr. Aquino on July 5, October 25, December 20, 2016, and February 22, 2017.  (AR 1062–73.)  At each appointment, Dr. Aquino noted similar physical findings and checked the same box with the same notations in the "work status" portion of the form.  (AR 1063–64, 1066–67, 1069–70, 1072–73.)  Plaintiff's pain level fluctuated at each appointment, but he reported an increase in his pain level at his appointment on October 25, 2016.  (AR 1068.)  Dr. Aquino referred Plaintiff for additional physical therapy and at Plaintiff's final appointment on February 22, 2017, Plaintiff reported he was "doing better" with a usual pain level of 3 out of 10 in severity and his TENS unit provides more than 50 percent temporary decrease in pain symptoms.  (AR 1062.)

### 6. State Agency Physicians

On February 17, 2016, G. Williams, M.D., a Disability Determination Services medical consultant, reviewed the medical evidence of record and concluded that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk six hours in an eight-hour day with normal breaks, and sit six hours in an eight-hour day with normal breaks. (AR 62.) Dr. Williams also concluded Plaintiff had no postural limitations and should avoid hazardous work environments because of decreased vision in his right eye. (AR 63–64.) Plaintiff requested reconsideration of Dr. Williams' opinion, and on April 28, 2016, another Disability Determination Services medical consultant, A. Pan, M.D., performed an independent review of Plaintiff's medical records and affirmed Dr. Williams' opinion. (AR 75–77.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for Disability Insurance Benefits on February 22, 2016, and again on reconsideration on April 29, 2016. (AR 81–85, 87–92.) Consequently, on May 11, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 93–94.) Plaintiff appeared with counsel at the hearing on May 22, 2017, and testified before an ALJ as to his alleged disabling conditions. (AR 16; *see generally* AR 34–53.)

### 1. Plaintiff's Testimony

Plaintiff testified that he is unable to work full-time because of a herniated disc with a tear in it in his back. (AR 36.) He is not taking any pain medication for his back because "it's not a fix for it" and if he starts them, then he would have to stay on them, which he does not want to do. (AR 37.) He uses a TENS unit about four times a day for fifteen to twenty minutes each time, which Plaintiff testified "saves" him. (AR 43–44.)

Plaintiff performs light house duties at home such as using a microwave, but limits himself to lifting no more than ten pounds. (AR 40.) He does not use a computer or cell phone at home because he never learned to use these devices. (AR 40–41.) He takes one or two naps a day, watches TV in the evening and morning, and builds birdhouses in his garage in his free time. (AR 41, 45.) He can only work in the garage on the birdhouses for fifteen to twenty minutes at

a time before going inside to sit in his recliner and use his TENS unit.  (AR 44.)

According to Plaintiff, he can stand or walk for three to four hours out of an eight hour day, and sit for a "couple hours" in an eight-hour day.  (AR 45.)  The rest of the time he spends in a recliner.  (AR 45.)

## 2.   Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing.  The ALJ asked the VE two hypothetical questions considering a person of Plaintiff's age, education, and work experience.  First, the ALJ asked the VE to consider a person who can perform sedentary work,[2] except this person could lift or carry ten pounds occasionally, sit four hours in an eight-hour day, and stand and/or walk one hour each in an eight-hour day.  (AR 49.)  This person would also require unscheduled rest breaks throughout the day causing the person to be off-task 20 percent of the day, and could never climb, balance, stoop, kneel, crouch, crawl, or work around hazards such dangerous machinery or unprotected heights.  (AR 49–50.)  The ALJ then asked the VE whether, given these limitations, there would be any full-time jobs available for such a person.  (AR 50.)  The VE testified that there would be no full-time work for such a person.  (AR 50.)

The ALJ then asked the VE a second hypothetical question considering a person that could perform medium work,[3] except this person could never work around hazards such as moving dangerous machinery or unprotected heights.  (AR 50.)  This person would also have sufficient visual acuity to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, and approaching people vehicles.  (AR 50.)  This person would require access to a restroom, but the need to use the restroom could be accommodated by the normal morning lunch and afternoon breaks.  (AR 50.)  The ALJ then asked the VE whether, given these limitations, there would be any full-time jobs available for such a person.  (AR 50.)  The VE testified that such a person could perform the following unskilled work: (1) auto detailer, Dictionary of Operational Titles ("DOT") code 915.687-034; (2) kitchen helper, DOT code 318.687-010; and (3) sandwich

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally[.]"  20 C.F.R. § 404.1567(a).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c).

maker, DOT code 317.664-010. (AR 51.)

**C.    The ALJ's Decision**

In a decision dated September 20, 2017, the ALJ found that Plaintiff was not disabled. (AR 16–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 18–26.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, October 24, 2011, through the date of the decision. (AR 22.) At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, osteoarthritis of the spine, and vision loss. (AR 18.) However, at Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 19.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[4]

> to perform medium work as defined in 20 CFR 404.1567(c) except [he] can never work around hazards, such as dangerous moving machinery or unprotected heights. He has sufficient visual acuity to avoid ordinary hazards in the work place (such as boxes on the floor, doors ajar, and approaching people or vehicles). He would require ready access to a restroom, but the need to use the restroom can be accommodated by the normal morning, lunch, and afternoon breaks.

(AR 20.) The ALJ gave "partial weight" to Dr. D'Amico's opinion because the limitation to semi-sedentary work was poorly supported and based on symptoms that were "intermittent at best." (AR 24.)

The ALJ also found Plaintiff's statements concerning his symptoms not entirely credible because his testimony was undermined by the medical record showing only intermittent limiting symptoms, his conservative treatment record, and his "robust range of daily living activities." (AR 24–25.) The ALJ determined that, given his RFC, Plaintiff was unable to perform his past work as an automobile dismantler (Step Four). (AR 24.) However, the ALJ concluded Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies including auto detailer, kitchen helper, and sandwich maker (Step Five). (AR 25.)

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996), 1996 WL 374184.

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 4, 2018. (AR 1–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff filed a complaint before this Court on June 1, 2018, seeking review of the ALJ's decision. (Doc. 1.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the

claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)–(3).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. § 404.1520(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. § 404.1520(d). If not, before considering the Fourth Step, the ALJ must determine the claimant's residual functional capacity, which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments. *Id*. § 404.1520(e). Next, at Step Four, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. § 404.1520(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. § 404.1520(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 404.1520.

## V.  DISCUSSION

In his Opening Brief, Plaintiff contends the ALJ erred in three respects: (1) the ALJ failed to articulate sufficient reasons for discrediting Dr. D'Amico's opinion, (2) the ALJ improperly ignored medical opinions from Dr. Wisner and Dr. Aquino, and (3) the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's subjective complaints. (*See generally* Doc. 11 at 4–12.) Defendant responds that the ALJ properly weighed the medical evidence and provided sufficient reasons for discrediting Plaintiff's subjective complaints. (Doc. 15 at 5–11.)

**A.    The ALJ's Consideration of the Medical Opinions**

       **1.    Legal Standard**

The weight given to medical source opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d 830–31). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

1999) (treating physician's conclusory, minimally supported opinion rejected); *see also*

*Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is

insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

**2. The ALJ Stated Sufficient Reasons for Partially Discrediting Dr. D'Amico's Opinions.**

Dr. D'Amico examined Plaintiff on two occasions and offered two opinions on Plaintiff's

capacity to work. (AR 792–802, 891–95.) First, on March 12, 2014, Dr. D'Amico opined

Plaintiff could bend and lift up to thirty pounds and stand no more than four hours per day. (AR

800–01.) Second, on July 6, 2015, he opined that Plaintiff was not capable of "very physical

work," but suggested consideration should be given to retraining Plaintiff for semi-sedentary or

non-physical work, such as a watchman or security guard. (AR 895.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. D'Amico's

opinions are contradicted by the medical opinion evidence of consultative examiner Dr. Schwartz,

who opined Plaintiff was capable of frequently stooping, standing and walking up to six hours,

sitting with no limitations, and lifting and carrying fifty pounds occasionally and twenty-five

pounds frequently. (AR 916.) Thus, the ALJ was required to state "specific and legitimate"

reasons, supported by substantial evidence, for discrediting Dr. D'Amico's opinions.

In giving partial weight to Dr. D'Amico's opinions, the ALJ reasoned:

> While it is clear that the claimant cannot return to heavy lifting, the limitation to semi-sedentary work is poorly supported. It appears that Dr. D'Amico suggested reduced standing and walking based on symptoms that are intermittent at best, and only noted "questionable straight leg raise" on his examination. This sign was not present at the 2016 examination by Dr. Schwartz.

(AR 24.) In other words, the ALJ partially discredited Dr. D'Amico's opinions because they were

1) conclusory, and 2) inconsistent with other medical evidence in the record.

"[A]n ALJ need not accept a treating physician's opinion that is conclusory and brief and

unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

An opinion may be rejected as "conclusory" if it includes "no specific assessment of [the

claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d

1428, 1432 (9th Cir. 1995); *see also Wilson v. Berryhill*, 732 Fed. Appx. 504, 506 (9th Cir. 2018) (The ALJ may properly reject opinions that do "not include specific functional limitations." (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

Here, in July 2015, Dr. D'Amico opined that Plaintiff should consider retraining for "semi-sedentary type work or work that would be nonphysical." However, Dr. D'Amico failed to include any specific functional limitations in this opinion and the terms "semi-sedentary" and "nonphysical" are not terms used by the applicable Social Security regulations to describe physical exertion capabilities. 20 C.F.R. § 404.1567 ("To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.") Additionally, Dr. D'Amico issued this opinion only after finding that Plaintiff's condition "dramatically changed since [his] previous examination" in March 2014, indicating that Plaintiff's functional limitations had changed since the March 2014 examination. (AR 874.) Accordingly, because Dr. D'Amico's July 2015 opinion fails to include any specific functional limitations, the ALJ did not err by discrediting the opinion as conclusory and "poorly supported." *See, e.g.*, *Mackay v. Astrue*, No. EDCV09-1453-MLG, 2010 WL 1051169, at *2 (C.D. Cal. Mar. 22, 2010) (holding the ALJ correctly rejected a treating physician's opinion as conclusory where the doctor's opinion "was not accompanied by a description of functional limitations caused by Plaintiff's medical condition"); *Cometa v. Berryhill*, No. 17-CV-06224-EDL, 2019 WL 1473454, at *12 (N.D. Cal. Feb. 14, 2019) (affirming the ALJ's credibility determination against a treating physician where the physician failed to "translate [her] observations into medical opinions about how those symptoms limit Plaintiff's functional capacity").

Further, even if the Court looks back to the specific functional limitations identified in Dr. D'Amico's March 2014 opinion, the ALJ properly rejected that opinion as inconsistent with other medical evidence in the record. "An ALJ may reject a doctor's opinion that is inconsistent with that doctor's notes or with other substantial evidence in the record." *Valenzuela v. Colvin*, No. EDCV 14–1486 AJW, 2015 WL 2228074, at *5 (C.D. Cal. May 8, 2015) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) and *Batson v. Comm'r or Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

(incongruity between treating physician's questionnaire responses and the medical records provides a specific and legitimate reason for rejecting treating physician's conclusion).

Here, the ALJ discounted Dr. D'Amico's walking and standing restrictions in his March 2014 opinion because other evidence in the record suggested Plaintiff's symptoms were "intermittent at best." (AR 24.) Specifically, the ALJ noted that in March 2014, Plaintiff's straight leg raising was negative, but in July 2015, straight leg raising was "questionably positive" on the right and positive on the left. (AR 21–22, 24.) The ALJ also noted that six months later in January 2016, straight leg raising was negative bilaterally in both the seated and supine positions at Dr. Schwartz's examination. (AR 22, 24.) Accordingly, even if the Court considers the functional limitations in Dr. D'Amico's March 2014 opinion, the ALJ properly weighed the conflicting evidence and discounted Dr. D'Amico's opinion based on incongruity between Dr. D'Amico's opinion and the medical record. *See, e.g.*, *Aaron B. v. Berryhill*, No. 2:18-CV-01297-AFM, 2019 WL 1755424, at *7 (C.D. Cal. Apr. 18, 2019) (finding no error where the where the ALJ gave the treating physician's "opinion limited weight based upon her conclusion that it was inconsistent with the medical evidence"); *McCoy v. Astrue*, No. C 11–00782 CRB, 2011 WL 4595008, at *5 (N.D. Cal. Oct. 4, 2011) ("It was not unreasonable for the ALJ to discount Dr. Hebrard's opinion in light of the other medical evidence, or to discount the parts of the opinion that were inconsistent with the record.").

Plaintiff does not specifically respond to the ALJ's finding that Dr. D'Amico's limitation to semi-sedentary work was poorly supported, which the Court construes as a waiver of opposition to this conclusion. *See Morales v. Berryhill*, No. 5:17-CV-01547-JDE, 2018 WL 3129781, at *5 (C.D. Cal. June 21, 2018) ("[T]he Court could treat Plaintiff's failure to address those other reasons offered by the ALJ as a waiver of an ability to challenge those reasons." (citing *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006)). Plaintiff responds to the ALJ's discounting of the standing and walking limitations in Dr. D'Amico's March 2014 opinion by identifying contrary evidence and asserting that "positive straight leg raising was demonstrated at other examinations in the record performed by various treating sources." (Doc. 11 at 6.) To be sure, the record also

contains some contrary evidence, such as a positive straight leg test from a physical therapist.[6] (AR 974). However, "credibility determinations are the province of the ALJ" and it is the function of the ALJ to resolve any ambiguities. *Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Although Plaintiff may disagree with the ALJ's specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### 3. The ALJ Was Not Required to Specifically Address the Opinions of Dr. Wisner and Dr. Aquino.

Plaintiff contends the ALJ erred by failing to specifically address the opinions of Dr. Wisner and Dr. Aquino. Plaintiff points to two instances where Dr. Wisner wrote "no work" on Plaintiff's workers' compensation reports. (Doc. 16 at 4 (citing AR 928, 932).[7]) Plaintiff also cites to several instances in the record where Dr. Aquino checked the box for "modified work with specific restrictions" on the "work status" portion of Plaintiff's workers' compensation form and added "as previously given, per AME/QME/PR4 – semi sedentary work." (Doc. 11 at 7 (citing AR 1062–77).)

In formulating a claimant's RFC, the Social Security regulations require the ALJ to "evaluate every medical opinion [it] receive[s]." 20 C.F.R. § 404.1527(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)." *Id.* § 404.1527(a)(1). However, the ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner," which

---

[6] Plaintiff also contends Dr. Wisner noted a positive straight leg test on February 3, 2016 (Doc. 11 at 7 (citing AR 919–20).) The Court notes that parts of Dr. Wisner's notes on this date are illegible and only page 919 potentially includes the note "+SLRS" that could be construed as a reference to straight leg raise testing. However, even if this notation is a reference to a positive straight leg sign, the Court still defers to the ALJ's judgment in resolving ambiguities and conflicts in the record.
[7] Plaintiff also identifies pages "936–27" and 931 as pages of the Administrative Record containing a "no work" opinion from Dr. Wisner. (Doc. 16 at 4.) Even assuming Plaintiff intended to cite to page 926–27, rather than 936–27, there are not any "no work" statements on these pages.

include whether a claimant is disabled and unable to work. *Id.* § 404.1527(d). Additionally, an ALJ "is not required to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Here, it is not clear from the record whether Dr. Wisner's "no work" statements in Plaintiff's workers' compensation status reports were observations of the fact that Plaintiff was not working at that time or specific opinions on Plaintiff's capacity to work. However, even construing the statements as opinions that Plaintiff was capable of "no work," the opinions were not medical opinions that the ALJ was required to specifically discuss or reject. The "no work" opinions were on an issue reserved to the Commissioner (i.e., that Plaintiff could not work) and Dr. Wisner offered no specific clinical findings to support his conclusion and no specific functional limitations. Therefore, the ALJ did not err by not specifically discussing and rejecting Dr. Wisner's vague "no work" opinions. *Guerrero v. Colvin*, No. 1:15–cv–0962–BAM, 2016 WL 5661722, at *8 (E.D. Cal. Sept. 29, 2016) (finding the ALJ did not err in failing to discuss a physician's opinion where the opinion was "brief, conclusory, and provided no explanation of specific functional limitations"); *Rivera v. Berryhill*, No. CV 16-05735-KES, 2017 WL 2233619, at *7 (C.D. Cal. May 22, 2017) (holding that the treating physician's "vague statement" that claimant's "symptoms impair her ability to sustain employment" was "not probative or significant because it was not based on any apparent objective or clinical findings, it did not articulate with any specificity what Plaintiff could still do, and it appeared to be limited to a brief description of Plaintiff's symptoms"); *Barry v. Astrue*, No. EDCV 09–2008–JEM, 2011 WL 165388, at *5 (C.D. Cal. Jan. 18, 2011) (finding the ALJ did not err in failing to discuss a physician's opinion where the "resulting opinion is brief, and it does not explain what clinical findings he relied upon in forming his opinion").

As for Dr. Aquino's opinion, Dr. Aquino checked the box for "modified work with specific restrictions" on the "work status" portion of Plaintiff's workers' compensation form. (AR 1063–64, 1066–67, 1069–70, 1072–73, 1077.) Dr. Aquino further described the work restrictions as "previously given, per AME/QME/PR4 – semi sedentary work." Similar to Dr. Wisner's "no work" statements, it is not clear if Dr. Aquino was describing her understanding of Plaintiff's

current work status or providing her opinion on Plaintiff's capacity to work. It appears Dr. Aquino was merely describing Plaintiff's current work status because Dr. Aquino provided the description under the heading "work status" and after responding "no" to whether Plaintiff was "currently working" and checking the box for "modified work status." (AR 1077.) However, even assuming Dr. Aquino intended to provide an opinion on Plaintiff's capacity to work, she was merely adopting Dr. D'Amico's opinion as her own. Therefore, any failure by the ALJ to specifically mention or discuss Dr. Aquino's "opinion" would be harmless error because, as set forth above, the ALJ provided sufficient specific and legitimate reasons for rejecting Dr. D'Amico's opinion (i.e., it was conclusory and inconsistent with other medical evidence in the record). *See Stout v. Comm'r of Soc. Security*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless where such error is inconsequential to the ultimate non-disability determination).

**B.      The ALJ's Consideration of Plaintiff's Credibility**

**        1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, the ALJ must engage in a two-prong analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1035–36). Second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

As to the second prong, "[t]he clear and convincing standard is 'not an easy requirement to meet' and it 'is the most demanding standard required in Social Security cases.'" *Wells v. Comm'r of Soc. Sec.*, No. 1:17–cv–00078–SKO, 2017 WL 3620054, at *6 (E.D. Cal. Aug. 23, 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)). "General findings are

insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see, e.g.*, *Vasquez*, 572 F.3d at 592 ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he] claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993))); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

### 2. The ALJ Properly Discounted Plaintiff's Subjective Complaints.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for several reasons:

> In terms of the claimant's alleged radiating back pain, the record reveals the claimant's experience of pain varied over the adjudicatory period with three or four episodes of exacerbation. These episodes appear to be what the claimant refers to when he says his back goes out completely immobilizing him. However, signs of neural impingement in the low back have been equivocal, and the claimant does not always demonstrate positive straight leg raising. Less than six months after the second Qualified Medical Examination, the claimant had a benign examination with Dr. Schwartz. These facts suggest that the most limiting symptoms are intermittent at best.

> With regard to his more common day to day symptoms, these appear to be muscular in nature and appear well controlled with the claimant's regimen of NSAIDs, TENS unit, heat, and massage. The fact that the claimant has been able to refuse narcotic analgesics throughout therapy, suggests that over the counter NSAIDs have managed his pain sufficiently well.

> This is consistent with the claimant's robust range of daily living activities, which include some yard work, some car maintenance, and a wood working hobby. Accordingly, the undersigned finds that the claimant's impairments cause some limitations, but ultimately, the record does not support that conclusion that those limitations completely preclude all work activity.

(AR 23.) In sum, the ALJ found Plaintiff's testimony was undermined by 1) Plaintiff's effective conservative medical treatment record; and 2) other objective evidence in the medical record.[8]

---

[8] The ALJ also noted that Plaintiff's conservative treatment record was "consistent with Plaintiff's robust range of daily living activities." (AR 23.) While an ALJ may consider a claimant's daily activities for purposes a credibility determination, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain

a. <u>Conservative Medical Treatment</u>

Importantly, nowhere in Plaintiff's Opening Brief does he claim the ALJ erred by discounting Plaintiff's testimony based on his conservative treatment record.[9] Therefore, Plaintiff has waived any challenge to the ALJ's credibility determination based on Plaintiff's conservative treatment record. *Owens v. Colvin*, No. CV 13-7794 AJW, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) ("Plaintiff fails to discuss, or even acknowledge, that the ALJ also relied on the objective medical evidence and the medical opinion evidence in assessing the credibility of his subjective complaints. [citation]. Therefore, plaintiff has waived any challenge to these remaining aspects of the ALJ's credibility finding." (citing *Greger*, 464 F.3d at 973)); *Jensen v. Colvin*, No. 15–cv–1104–AJB–DHB, 2016 WL 4501075, at *4 (S.D. Cal. Aug. 29, 2016) ("Plaintiff does not contest the ALJ's determination relating to her mental health; accordingly, such argument is waived."); *see also, e.g.*, *Nathan v. Colvin*, 551 Fed. Appx. 404, 406 (9th Cir. 2014) (holding the claimant waived his argument that the ALJ erred in finding the claimant's condition improved, where the claimant failed to raise that argument in the district court).

However, even if Plaintiff had disputed this finding, the ALJ's credibility assessment properly relied on evidence showing Plaintiff's pain symptoms were "well controlled" with conservative medical treatment, which included NSAIDs, a TENS unit, heat, and massages. An ALJ may properly rely on such effective conservative treatment to discredit a claimant's testimony. *Tommasetti*, 533 F.3d at 1040 (favorable response to conservative treatment undermined claimant's testimony of subjective complaints); *see also Warre v. Comm'r of Soc.*

what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. Here, the ALJ's one-sentence reference to Plaintiff's daily activities fails to explain how Plaintiff's testimony regarding his daily activities is inconsistent with any other portion of Plaintiff's testimony. Plaintiff briefly raises this issue in his opening brief, but Plaintiff's cursory argument is only eight lines long and fails to cite any authority whatsoever. (Doc. 11 at 12.) Therefore, the Court declines to address this issue. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing."). However, to the extent the ALJ erred in his discussion of Plaintiff's daily activities, the error would be harmless because Plaintiff's conservative treatment record is a sufficient clear and convincing reason to discredit Plaintiff's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record).

[9] The Court notes that in four lines in his Opening Brief—and without citing any authority—Plaintiff responds to the ALJ's assertion that Plaintiff's symptoms "appear muscular in nature." (Doc. 11 at 12.) However, the ALJ found Plaintiff's symptoms both "appear to be muscular in nature **and** appear well controlled with" conservative treatment (AR 23 (emphasis added)), and Plaintiff entirely ignored the second part of the ALJ's reasoning for discrediting Plaintiff's testimony.

*Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.").

Ample evidence in the record demonstrates that conservative treatments effectively control Plaintiff's symptoms. Although Plaintiff testified he is unable to work due to pain from a herniated disc in his back (*see* AR 36), he also reported to Dr. Schwartz that his pain is "made better" by his TENS unit, back brace, and massages (AR 912). Additionally, Plaintiff reported to Dr. Aquino that his TENS units provides "good relief" and his medications provide "adequate decrease in the pain level." (AR 1074.) Thus, despite Plaintiff's allegations of debilitating back pain, the ALJ's finding that Plaintiff's conservative treatment improved his symptoms was a clear and convincing reason to discredit Plaintiff's testimony. *See, e.g.*, *Clemmons v. Astrue*, No. 1:09–cv–0469–SKO, 2010 WL 3715136, at *7 (E.D. Cal. Sept. 16, 2010) ("[T]he ALJ's consideration of Plaintiff's improvement when she took her pain medication as noted by Dr. Evans in February 2005 . . . was a clear and convincing reason to discount Plaintiff's testimony."); *Cox v. Berryhill*, No. 16–cv–0306–BAM, 2017 WL 3172984, at *5 (E.D. Cal. July 26, 2017) ("The ALJ's finding that Plaintiff's improvement with medication and treatment undercut Plaintiff's allegations of total disability was a legally sufficient basis to reject the extent of Plaintiff's symptom testimony.").

### b. Objective Medical Evidence

The ALJ did not err in finding that the objective medical evidence fails to support Plaintiff's subjective complaints. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161 (citing *Johnson*, 60 F.3d at 1434); *see also Morgan*, 169 F.3d at 600 ("Citing the conflict between [the plaintiff's] testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined [the plaintiff's] credibility."); *Burt v. Colvin*, 611 Fed. Appx. 912, 914 (9th Cir. 2015) ("[T]he ALJ properly discredited Burt's testimony because it was contradicted by the medical record.")

Here, despite Plaintiff's claims of debilitating back pain, the ALJ cited multiple examples to support his conclusion that Plaintiff's "most limiting symptoms are intermittent at best." For example, the ALJ noted signs of neural impingement in Plaintiff's lower back were equivocal.

(AR 21–23 (citing AR 490 (2011 MRI of the lumbar spine showing "tiny posterior annular tear and disc bulge at the L5–S1 without neuropathic impingement"), 847 (2015 MRI of the lumbar spine showing "small posterior disc protrusions at L4–L5 and L5–S1" and unchanged degeneration at L5–S1)).) The ALJ also noted Plaintiff "does not always demonstrate positive leg raising." (AR 21–23 (citing AR 797 (March 2014 examination showing negative bilateral straight leg raises), 891 (July 2015 examination showing "questionably positive" straight leg raising on the right and positive on the left), 915–16 (January 2016 examination showing straight leg raising was negative bilaterally in both the seated and supine positions)).) Accordingly, the Court finds the ALJ properly discredited Plaintiff's testimony regarding his debilitating pain symptoms based on inconsistencies between the medical record and Plaintiff's testimony. *Lane v. Colvin*, No. 2:14–cv–02391–AC, 2016 WL 1073259, at *8 (E.D. Cal. Mar. 18, 2016) (finding "the cited medical evidence adequately supports the ALJ's credibility determination" where the ALJ's decision "point[ed] specifically to reports that cast doubt upon [the claimant's] claims"); *White v. Colvin*, No. 1:15–cv–01367–JLT, 2017 WL 387244, at *9 (E.D. Cal. Jan. 27, 2017) ("Because the ALJ identified inconsistencies between the medical record and Plaintiff's testimony, the objective medical record supports the adverse credibility determination." (citing *Greger*, 464 F.3d at 972)).

Without citing any authority, Plaintiff contends "lack of objective medical evidence alone can never amount to clear and convincing reasons to reject the subjective [sic] limitans once the ALJ has identified a severe impairment that could be the source of the pain." (Doc. 11 at 12.) While Plaintiff is correct that his allegations of pain and physical limitations cannot be rejected simply because of the absence of objective medical evidence to support them, "the ALJ may consider and rely upon objective medical evidence and physician opinions that **contradict plaintiff's subjective testimony**." *Branson v. Berryhill*, No. 2:15–cv–2675 AC, 2017 WL 1179160, at *6 (E.D. Cal. Mar. 30, 2017) (emphasis added) (citing *Carmickle*, 533 F.3d at 1161)); *see also Ferris v. Colvin*, No. 2:14–cv–02569–AC, 2016 WL 1117771, at *8 (E.D. Cal. Mar. 22, 2016) (finding the ALJ erred by relying on the claimant's activities of daily living to discredit the claimant's testimony, but the error was harmless because of inconsistencies between the testimony

and medical record).  Here, the ALJ properly relied on portions of the medical record that undermined Plaintiff's testimony, and there is no error in it.

## VI.   CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **May 8, 2019**                                      /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE